**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

**TELESFORO PAGÁN-GONZÁLEZ, ET AL,**

**Plaintiffs**

**v.**

**CHR SAN JUAN, LLC, ET AL,**

**Defendants.**

**Civil No. 25-1070 (ADC)**

## MEMORANDUM AND ORDER

Before the Court are two motions to dismiss filed by CHR San Juan, LLC ("CHR"), Víctor M. Gómez Orta III and the Conjugal Partnership of Víctor M. Gómez Orta III and Sam Doe, Miguel López-Rivera (jointly "defendants"). **ECF Nos. 46** and **47**.

For the reasons stated herein, the motions to dismiss are **GRANTED**.

## I. Background

On June 4, 2024, plaintiff Telesforo Pagán-González ("Pagán-González") filed a charge of age discrimination with the Equal Employment Opportunity Commission ("EEOC"), and received the so-called Right-to-Sue letter on November 7, 2024. On February 5, 2025, plaintiff, his wife Elena Mar Pérez-Blair, and their conjugal partnership ("plaintiffs") filed the instant action. **ECF No. 1**. Plaintiffs sued CHR, CHR's Chief Executive Officer Miguel López-Rivera ("López-Rivera"), Pagán-González's supervisor, Víctor M. Gómez Orta III ("Gómez-Orta"), their

respective spouses and conjugal partnerships, ABC Corporation, and DEF Insurance Company ("defendants"). Plaintiffs claim constructive discharge, age-based discrimination, harassment, and retaliation under the federal Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and other state law claims including "unjust dismissal" pursuant to Puerto Rico Law No. 80 of 1976 ("Law 80"), age discrimination pursuant to Law No. 100 of 1959, P.R. Laws Ann. t. 29, § 146 *et seq.* ("Law 100"), retaliation pursuant to Law No. 115 of 1991 ("Law 115"), workplace bullying or harassment pursuant to Law No. 90 of 2020 ("Law 90"), and the general tort provisions under the Puerto Rico Civil Code of 2020.

On May 12, 2025, CHR and Gómez-Orta (along with his conjugal partnership) filed a Partial Motion to Dismiss, arguing that ADEA, Law 100, Law 115, Law 80, and Law 90 do not impose individual liability on supervisors, and that plaintiffs failed to exhaust required internal and administrative remedies under Law 90. Plaintiffs opposed, arguing that dismissing individual defendants was premature prior to discovery and that exhausting Law 90 procedures would have been futile. **ECF No. 25**. On July 21, 2025, López-Rivera filed a separate motion to dismiss challenging personal liability under the ADEA and the asserted local statutes. Plaintiffs filed their opposition on August 19, 2025. **ECF No. 38**.

The Court issued an order denying all pending motions to dismiss without prejudice and granted plaintiffs leave to file an amended complaint. Plaintiffs filed their amended complaint on September 15, 2025. **ECF No. 40**. In essence, the amended complaint added several details to

the factual narrative and stated that the exact status of Pagán-Gonzalez's supervisors was unclear and required clarification through discovery. *Id*.

On October 10, 2025, CHR and Gómez-Orta filed a second partial motion to dismiss, contending that the amended complaint failed to cure previous pleading defects, still lacked factual support for individual liability, and failed to plead the required exhaustion under Law 90. **ECF No. 46**. Three days later, on October 13, 2025, López-Rivera filed his second motion to dismiss. **ECF No. 47**. He argues that the claims against him were conclusory and that he could not be held individually liable. Moreover, he charged plaintiffs with a potential Rule 11 violation and informed the Court that he provided safe harbor-notice to plaintiffs in order to seek sanctions regarding "sham" allegations concerning his employer status. *Id*.

On October 28, 2025, plaintiffs filed a motion for voluntary partial dismissal with prejudice under Fed. R. Civ. P. 41(a)(1). **ECF No. 50.** Specifically, plaintiffs voluntarily dismissed with prejudice all personal capacity claims against López-Rivera under the ADEA, Law 80, and Law 115. However, plaintiffs noted that the claims pursuant to Law 100, Law 90, and tort damages under the Puerto Rico Civil Code of 2020 remained pending.

On November 13, 2025, plaintiffs opposed the motion to dismiss at **ECF No. 46**, contending that discovery was necessary to determine corporate ownership and structure, that Law 100 permits individual liability for direct personal participation in discrimination, and that Law 90 exhaustion was excused due to futility after management ignored formal complaints sent on September 14, 2023, and February 13, 2024. **ECF No. 54**. Plaintiffs also opposed López-

Rivera's motion to dismiss at **ECF No. 47**, noting that their notice of voluntary dismissal at **ECF No. 50** mooted López-Rivera's arguments regarding the ADEA, Law 80, Law 115, and Rule 11. **ECF No. 55.** In essence, plaintiffs argued that the remaining Law 100, Law 90, and Civil Code claims against López-Rivera should proceed due to his alleged involvement in discriminatory actions and failure to address harassment reports related to Pagán-González. *Id*.

On December 22, 2025, CHR and Gómez-Orta filed a reply in support of their second partial motion to dismiss. **ECF No. 58.** They argued that employer status is a threshold legal question that should not be deferred to discovery without plausible factual allegations. In that regard, they argued that routine institutional management decisions do not constitute individual workplace harassment under Law 100, and that Law 90 mandates a sequential exhaustion process—including mandatory mediation—which cannot be bypassed through assertions of futility. *Id*.

## II. Legal standard

When ruling on a motion to dismiss brought pursuant to Fed. R. Civ. P 12(b)(6), courts must "accept the truth of all well-pleaded facts and draw all reasonable inferences therefrom in the pleader's favor." *García-Catalán v. United States*, 734 F.3d 100, 102 (1st Cir. 2013) (quoting *Grajales v. P.R. Ports Auth.*, 682 F.3d 40, 44 (1st Cir. 2012)). "While detailed factual allegations are not necessary to survive a motion to dismiss for failure to state a claim, a complaint nonetheless must contain more than a rote recital of the elements of a cause of action… [and they] must contain sufficient factual matter to state a claim to relief that is plausible on its face." *Rodríguez-*

*Reyes v. Molina-Rodríguez*, 711 F.3d 49, 53 (1st Cir. 2013) (cleaned up) (citing, inter alia, *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009)). In order to perform this plausibility inquiry, the Court must "separate factual allegations from conclusory ones and then evaluate whether the factual allegations support a 'reasonable inference that the defendant is liable for the misconduct alleged.'" *Conformis, Inc. v. Aetna, Inc.*, 58 F.4th 517, 528 (1st Cir. 2023) (citing *Iqbal*, 556 U.S. at 678, and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "If the factual allegations in a complaint, stripped of conclusory legal allegations, raise no 'more than a sheer possibility that a defendant has acted unlawfully,' the complaint should be dismissed." *Frith v. Whole Foods Mkt., Inc.*, 38 F.4th 263, 270 (1st Cir. 2022) (quoting *Rodríguez-Reyes*, 711 F.3d at 53, and *Iqbal*, 556 U.S. at 678). In sum, "[t]he relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint." *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 13 (1st Cir. 2011).

## III. Discussion

### A. The allegations

This case was filed pursuant to this Court's "arising under" jurisdiction 28 U.S.C. § 1331. *See* **ECF No. 40** at 1; **ECF No. 1**. Plaintiffs' sole federal law claim is based on alleged violations of ADEA. *See id*; **ECF Nos. 54** and **55.** The remaining claims are before this Court on supplemental jurisdiction grounds. **ECF Nos. 54** at 8 and **55** at n.3.

Defendants challenge the plausibility of the allegations related to ADEA violations. *See* **ECF Nos. 46** and **47**. Specifically, defendants argued that the amended complaint "contains no

allegations of anyone ever making pejorative comments regarding… age. Likewise, [it] does not allege that plaintiff was replaced by a younger individual or that younger employees were treated more favorably than this 60-year-old man." **ECF No. 47** at 7. Despite defendants' head-on challenge to plaintiffs' only federal claim, plaintiffs remained silent in their response. *See* **ECF Nos. 54** and **55**. Instead, plaintiffs focused on addressing the individual liability issues. *Id*.

The Court agrees with defendants. The amended complaint contains no plausible allegations to nudge plaintiffs' ADEA claims past speculation.

Briefly, the complaint states that Pagán-González spent over thirty years building his career within the defendants, beginning in 1993 as a salesperson for "Triangle Dealers," later "Auto Grupo." **ECF No. 40** at 4-5. Under his direct leadership and management, the dealership's "Fleet Department" achieved top performance across Puerto Rico, consistently earning recognition as the island's top seller for several motor vehicle brands. Following CHR's acquisition of Auto Grupo, CHR allegedly operated as a successor employer, retaining the same facilities, personnel, and operations. Because Pagán-González was one of the oldest employees in top management and enjoyed a high compensation package, plaintiffs allege, new corporate management initiated a "systematic[]" campaign of age discrimination and workplace harassment to force him to resign. *Id*., at 5.

The discriminatory pattern allegedly began when the new management isolated and stripped Pagán-González of his access to information. *Id*., at 5-6. Plaintiffs further claim that on July 2023, Gómez-Orta summoned Pagán-González to a meeting to falsely blame him for failing

to help with the integration of the employees to the new business models. CHR also restructured the Fleet Department the plaintiff oversaw. *Id.*, at 6.

The amended complaint further alleges that Gómez-Orta and López-Rivera requested that Pagán-González prepare a new compensation proposal for his sales team. *Id.*, 6-7. He complied by July 17, 2023, but CHR ignored his recommendation and issued a different plan. When both Pagán-González and the sales staff rejected the proposed plan, Gómez-Orta and López-Rivera held a meeting with the sales team on August 24, 2023. However, Pagán-González was not invited to that meeting. *Id.*, at 7.

On September 11, 2023, López-Rivera presented Pagán-González with a new compensation plan effective retroactively to September 1. *Id.*, at 7-8. This new arrangement changed the way Pagán-González's 20-year commissions were calculated for the prior two decades. Instead of paying him the usual 7.5% of the Gross Profit, Pagán-González's new compensation plan was calculated with Net Operating Income. *Id.*, at 9. According to plaintiffs, this represented a significantly lower figure and was directly dependent on the company's actions beyond Pagán-González's control. While every other member of the sales team received a commission rate increase, Pagán-González was the only employee whose commission rate was reduced. *Id.*, 9.

Plaintiff also alleges that he had a side venture in the printing business, which the previous management contracted for all the dealership's signage and printing needs.[1] According to plaintiffs, however, on August 2, 2023, López-Rivera asked for quotes from printing businesses other than Pagán-González's side private printing business for signage and graphics to be used in the dealership. *Id*., at 10. Plaintiffs allege that such actions were intended as a tactic to humiliate him. *Id*.

In response to these so-called "escalating" actions, Pagán-González filed internal complaints. *Id*, at 11. Specifically, he sent a letter to Gómez-Orta on September 14, 2023, rejecting his compensation reduction and reporting a hostile work environment based on the events described above. According to the allegations, management merely offered a dismissive promise to "get back to you" and allegedly intensified the harassment. *Id*. Among other things, in support for its claim that the harassment intensified, plaintiffs allege that in October 2023, López-Rivera publicly humiliated Pagán-González by announcing to his subordinates that López-Rivera was in charge and would require Pagán-González to clock in and out daily. *Id*., at 11. Moreover, the amended complaint states that in December 2023, López-Rivera privately warned Pagán-González without explanation that "everything was going to change." *Id*., at 12. Harassment extended to other interactions, such as a hostile encounter with a new accounting

[1] Plaintiffs do not reference any authority supporting the notion that defendants' business decision towards an employee's side gig that is not covered by the employment relationship, even if unlawful, is actionable under employment statues.

employee who disrespectfully told Pagán-González, "Mira, mijo,[2] bájale dos" (which the Court can roughly translate to "look, son, take it down two notches") when he attempted to explain commission calculations. *Id*. When Pagán-González sought a meeting with López-Rivera to address the alleged hostility, López-Rivera referred the matter to HR Director. In response, HR dismissed Pagán-González's concerns and told him, "you seem like you don't know about the new laws," allegedly implying that he was old. *Id*., at 13.

Plaintiffs claim that under such humiliation, Pagán-González suffered severe emotional anguish, deteriorating health, and financial harm. He was, thus, left with no reasonable alternative but to tender his resignation on March 10, 2024, consummating his constructive dismissal. Following his resignation, the company rehired the sales employees who had previously resigned but not Pagán-González. *Id*., at 13-14.

**B. Failure to state a plausible claim under ADEA**

Generally, ADEA prohibits an employer from discriminating against an employee over the age of 40 due to his age. 29 U.S.C. §§ 623(a)(1), 631(a). District courts have explained that ADEA complaints "must set forth some facts indicating a relationship between the plaintiff's protected characteristic… and some adverse employment action taken against the plaintiff… Put simply, the complaint has to allege a plausible basis for a claim of *discrimination*, not just

[2] Plaintiffs do not contend that in the context "mijo" (slang for "mi hijo" or "son") was used, it had any age - related connotation.

unfair treatment." *Alicea v. N. Am. Cent. Sch. Bus, LLC*, 232 F. Supp. 3d 213, 215 (D. Mass. 2017)(emphasis in the original).

The Court can only find two allegations related to ageism, plaintiffs' only federal claim. First, plaintiffs' allegation that "[t]here is no other explanation for the behavior shown by all Defendants towards Pagán, except his age and that they wanted him to resign." **ECF No. 40** at 11. And finally, HR representative's comment "you seem like you don't know about the new laws," which plaintiffs condemn as an age-disparage statement. *Id.*, at 13. Read in the light most favorable to plaintiffs and drawing all reasonable inferences in their favor, these are not plausible allegations of any type of discrimination based on age.

As this Court once remarked, "[i]nvoking the mantra of discrimination without any factual support is not enough to state a plausible claim." *Pacheco v. Becerra*, No. CV 23-1279 (ADC), 2024 WL 4362340, at *9 (D.P.R. Sept. 30, 2024). Indeed, a complaint "must contain sufficient factual matter to state a claim to relief that is plausible on its face." *Grajales v. P.R. Ports Auth.*, 682 F.3d 40, 44 (1st Cir. 2012). Thus, "[f]inding an 'obvious alternative explanation' for the alleged [unlawful] behavior of the defendants" may foreclose on plaintiffs' chances of success at the motion to dismiss stage. *Frith v. Whole Foods Mkt., Inc.*, 38 F.4th 263, 270 (1st Cir. 2022).

As to the first allegation, **ECF No. 40** at 11, the Court cannot think of better example of a conclusory and speculative statement. Plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Rodríguez-Reyes v. Molina-Rodríguez*, 711 F.3d 49, 53 (1st Cir. 2013). Plaintiffs' self-serving interpretation of certain

business decisions amounts only to pure speculation, which is, of course, not enough to survive dismissal. *See Twombly*, 550 U.S. at 555 (requiring enough factual material "to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact[].").

As to the "new law" statement, it is very difficult for the Court to see any discriminatory connotation in it. Aside from claiming it was discriminatory, plaintiffs point to no other set of facts or legal authority for the Court to infer that a statement about a purported change in the law can translate to civil rights discrimination. But even assuming it does carry some discriminatory undertone, it is not enough. The Court can think of many obvious alternate, non-discriminatory explanations for such statement. *See Frith*, 38 F.4th at 270. At the outset, the Court notes that the challenged statement was made during a human resources ("HR") meeting Pagán-González had requested to complain about the conduct of another employee. *See* **ECF No. 40** at 13 ("During that meeting… head of Human Resources, was addressing the situation between Pagán and the employee who had acted disrespectfully towards Pagán…."). Any reader of the amended complaint could think that the at-issue statement was a typical response from a human resources department. The statement could have also sprouted from Pagán-González's comments on what he thought was actionable conduct or the current state of the law, not from animus to discriminate against him. Conversely, there is no factual content from which to *reasonably* infer discriminatory animus. *Air Sunshine, Inc. v. Carl*, 663 F.3d 27, 37 (1st Cir.

2011)("As between these obvious alternative explanations for the… discrimination… [plaintiffs] asks us to infer, discrimination is not a plausible conclusion.").

Read in the light most favorable to plaintiffs, "there is not a single allegation in the complaint that connects [the adverse employment actions] to [Pagán-González's] protected status… Indeed, the complaint is devoid of any facts connecting [Pagán-González's "constructive dismissal," retaliation or harassment] to [his]… age." *Alicea v. N. Am. Cent. Sch. Bus, LLC*, 232 F. Supp. 3d at 215–16.

**C. Waiver or failure to develop argument**

Defendants clearly raised concerns about the lack of plausible allegations of ADEA violations and moved for dismissal pursuant to Fed. R. Civ. P. 12(b)(6) on those grounds. *See inter alia* **ECF No. 47** at 7. Plaintiffs, on the other hand, did not address those specific concerns. *See* **ECF Nos. 54** and **55**. Instead, as noted before, plaintiffs focused on the employer-employee controversy, which the Court need not address here.

Local Civil Rule 7 provides that the failure of a party to file a written response to a motion is deemed as a waiver to any objection that party may have had to the motion. L. Civ. R. 7(b). That rule "authorizes the presiding district judge to summarily grant the unopposed motion, at least when the result does not clearly offend equity." *NEPSK, Inc. v. Town of Houlton*, 283 F.3d 1, 7 (1st Cir. 2002) (internal quotation marks omitted); *see also Jones v. Providence Pub. Schs.*, No. 23-1407, 2024 WL 1128034, at 1 (1st Cir. Mar. 11, 2024) (reasoning that, in order to grant a motion to dismiss under Fed. R. Civ. P. 12(b)(6) on procedural default, "the relevant local rule generally

must impose a mandatory requirement to file an opposition and/or must warn that a plaintiff will be deemed to have waived arguments in opposition to dismissal if that plaintiff does not file an opposition….”). Indeed, “[w]here a local rule expressly requires a response to a motion, the non-moving party is placed on notice that failure to respond could result in a procedural default.” *Pomerleau v. W. Springfield Pub. Sch.*, 362 F.3d 143, 145 (1st Cir. 2004) (citing *Pinto v. Universidad De Puerto Rico,* 895 F.2d 18, 19 (1st Cir. 1990)).

Aside from the fact that the Court could have granted dismissal on procedural default grounds alone pursuant to Local Civil Rule 7, the fact is that plaintiffs have not pointed to allegations that would shed a different light on the Court’s analysis, nor did they develop an argument for the Court to find otherwise. *See United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990)(“Judges are not expected to be mindreaders. Consequently, a litigant has an obligation ‘to spell out its arguments squarely and distinctly,’ or else forever hold its peace.”)(*id*. quoting *Rivera–Gómez v. de Castro,* 843 F.2d 631, 635 (1st Cir. 1988)).

As it stands, on its own, the Court has only been able to identify a handful of allegations concerning purported ageism. But those allegations are speculative and stand far from the plausibility standard for any form of ADEA discrimination claim.

## IV. Conclusion

The amended complaint fails to state a plausible claim for discrimination under ADEA. For the reasons stated above, the motions to dismiss, **ECF Nos. 46** and **47,** are **GRANTED.** Accordingly, the motion for joinder at **ECF No. 52** is also **GRANTED.**

The Court declines to exert supplemental jurisdiction, 28 U.S.C. § 1367(c), over plaintiffs' state law claims, and thus **DISMISSES** any such claims without prejudice.

Clerk of Court shall enter judgment dismissing plaintiffs' federal claims with prejudice and state law claims without prejudice.

**SO ORDERED**.

At San Juan, Puerto Rico, on this 30th day of September 2026.

**S/AIDA M. DELGADO-COLÓN**
**United States District Judge**